# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JOHNNY RAY CHANDLER, SR.,         )
                                  )
       Plaintiff,                 )
                                  )
v.                                )   Civil Action No. 16-1491 (BAH)
                                  )
FEDERAL BUREAU OF PRISONS, *et al.*, )
                                  )
       Defendants.                )

## MEMORANDUM OPINION

This matter is before the Court on the Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment, ECF No. 13. For the reasons discussed below, the motion will be granted.1

## I. BACKGROUND

At all times relevant to the Complaint, the plaintiff was in the custody of the Federal Bureau of Prisons ("BOP") and incarcerated at the Administrative Maximum United States Penitentiary in Florence, Colorado. Defs.' Mem. of P. & A. in Support of Defs.' Mot. to Dismiss or, Alternatively, for Summ. J., Ellington Decl. ¶ 2.

According to the plaintiff, on December 31, 2015, the defendants Charles Porco, Unit Manager, and J. Osland, Case Manager, came to his cell in order to conduct a unit disciplinary hearing on two minor disciplinary infractions: lying to staff and disobeying a direct order. Compl. at 2. "After the hearing [,] the [Unit Disciplinary Committee] chaired by [defendant] Porco rendered . . . sanctions," *id.*, namely "26 days of mattress restriction," *id*. at 3. Thus, the

---

1       The defendants' Motion for Extension of Time to File Reply, ECF No. 15, will be denied as moot.

1

plaintiff's mattress was "confiscated each morning at sunrise and [was] to be given back to [him] at sunset." *Id*. On January 13, 2016, although the plaintiff was to have received his mattress by 6:30 p.m., he did not receive his mattress "until after 8:45 p.m. well pass [sic] the time limit." *Id*.

The plaintiff deems the sanction, which allegedly left him "to sleep upon a cement slab without a mattress[, a] cruel, unusual and inhumain [sic] punishment" in violation of the Eighth Amendment to the United States Constitution. *Id*. He demands $100,000.00 from each defendant and "an injunctive freeze . . . on each defendant[']s personal property until [the plaintiff is] paid in full." *Id*. at 4.

The "[p]laintiff submitted a 'Federal Tort Claim' with BOP on January 21, 2016, alleging that he was harmed by his placement on mattress restriction on December 31, 2015." Ellington Decl. ¶ 12. He claimed "personal injury and abuse of process committed by staff," alleging that, "[a]s a direct result of not having a mattress to sleep on and having to lay on bare concrete, [he] sustained joint stiffness in [his] left shoulder and . . . left hip," causing him "severe main." *Id*., Ex. A (Federal Tort Claim) at 2. BOP denied the claim on April 6, 2016. *Id*. ¶ 14. Its "investigation . . . did not reveal that [the plaintiff had] suffered any personal injury as a result of the negligent acts or omissions of [BOP] employees acting within the scope of their employment." *Id*., Ex. A (Letter to the plaintiff from Richard W. Schott, Regional Counsel, North Central Regional Office, BOP, dated April 6, 2016).

The BOP's Administrative Remedy Program is a means by which inmates may "seek formal review of any aspect of their confinement." Ellington Decl. ¶ 4. It "is typically a four-tiered review process comprised of an informal resolution process and then formal requests to the Warden, the Regional Director, and the Office of the General Counsel." *Id*.; *see id*. ¶ 5. The "process is not complete until the Office of General Counsel replies, on the merits, to the

inmate's [request]." *Id*. ¶ 5. The BOP's declarant states that, of the 77 formal administrative remedy requests and/or appeals [the plaintiff submitted to] the BOP" between December 31, 2015 and October 1, 2016, *id*. ¶ 8, "none . . . relates to the claims alleged in this litigation," or to any "incident occurring on December 31, 2015," *id*. ¶ 10. Thus, she concludes that the plaintiff "did not exhaust his administrative remedies as related to complaints against [the] defendants raised in the present case through the BOP's Administrative Remedy Program." *Id*. ¶ 11.

On March 8, 2016, in the Superior Court of the District of Columbia, the plaintiff filed the instant civil action, which defendants removed to this Court on July 20, 2016.[2]

## II.   DISCUSSION

Pleadings by *pro se* litigants are construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *United States v. Arrington*, 763 F.3d 17, 22 (D.C. Cir. 2014) (noting "'obligation to construe pro se filings liberally'" (quoting *Toolasprashad v. Bureau of Prison*s, 286 F.3d 576, 583 (D.C. Cir. 2002)). Consequently, given the nature of the plaintiff's factual allegations, the Court construes the plaintiff's complaint as asserting claims under the Federal Tort Claims Act ("FTCA"), *see* 28 U.S.C. §§ 2671-2680, and the Civil Rights Act, *SEE* 42 U.S.C. § 1983.

The defendants filed their motion to dismiss or, alternatively, for summary judgment on November 11, 2016. On November 14, 2016, the Court issued an Order which advised the plaintiff of his obligations under the Federal Rules of Civil Procedure and the local civil rules of

---

[2]   The plaintiff's "abuse of the court system has been so systematic that he may not file any civil action in this Court without first obtaining permission." *Chandler v. James*, 783 F. Supp. 2d 33, 36 (D.D.C. 2011) (citing *Chandler v. D.C. Dep't of Corr*., Civil Action No. 95-2366, Memorandum Order (D.D.C. Mar. 11, 1996)). Moreover, his "legal complaints have been so numerous and so lacking in merit that he is now barred, except in extraordinary circumstances, from filing new lawsuits while in prison without first paying the full amount of any administrative filing fee." *Id*. The plaintiff's initiation of new lawsuits in Superior Court has, to date, circumvented the litigation pre-conditions imposed on him by this Court.

this Court.  *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992); *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988).  Specifically, the Court notified the plaintiff that, if he failed to file an opposition or other response to the defendants' motion by December 7, 2016, the Court would treat their motion as conceded.   *See* Local Civil Rule 7(b) (permitting court to "treat . . . as conceded" a motion not met with a timely opposing memorandum of points and authorities).  To date, the plaintiff has not filed an opposition to the motion, or requested more time to file an opposition, or advised the Court of any change of address.

Under these circumstances, the Court ordinarily would have granted the defendants' motion as conceded.  However, the United States Court of Appeals for the District of Columbia Circuit recently has raised concerns about the use of Local Civil Rule 7(b) to grant an unopposed motions to dismiss, *see Cohen v. Bd. of Trs. of the Univ. of the District of Columbia*, 819 F.3d 476, 482 (D.C. Cir. 2016), and an unopposed motion for summary judgment, *see Winston & Strawn, LLP v. McLean*, No. 14-7197, __ F.3d __, __, 2016 WL 7174125, at *3 (D.C. Cir. Dec. 9, 2016).  Despite acknowledging the value of Local Civil Rule 7(b) as an important "docket-management tool that facilitates efficient and effective resolution of motions," *Cohen*, 819 F.3d at 480 (quoting *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004) (additional citation omitted)), the rule "stands in tension with . . . Rule 12(b)(6)," *id*. at 481, and "cannot be squared with . . . Rule 56," *Winston & Strawn*, 2016 WL 7174125, at *3.

If the Court were to grant the defendants' motion to dismiss as conceded, it "effectively places the burden of persuasion on the [plaintiff because,] when he fails to respond, he loses." *Cohen*, 819 F.3d at 481.  Further, such treatment of a Rule 12(b)(6) motion "risks circumventing the clear preference of the Federal Rules to resolve disputes on their merits." *Id*. at 482.  Similarly, if the Court were to grant the defendants' motion for summary judgment as conceded,

it erroneously shifts the burden to the plaintiff when "[t]he burden is always on [the defendants] to demonstrate why summary judgment is warranted." *Winston & Strawn*, 2016 WL 7174125, at *1. The Court "must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (citation omitted) (Griffith, J., concurring).

### A. The Plaintiff's Claim Under The Federal Tort Claims Act

The Court accepts the representation that defendants "Charles Porco, Jeffrey Osland, Joseph Muñoz and Charles Samuels were employees of the Government and were acting within the scope of their employment for the [BOP] at the time of the allegations stated in Plaintiff's Complaint." Certification, ECF No. 13-8. In these circumstances, the Court proceeds as if the plaintiff had brought his claim against the United States directly, such that his only route to recovery is the FTCA.[3]

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Under the doctrine of sovereign immunity, the United States is immune from suit unless Congress expressly has waived the defense of sovereign immunity by statute. *See id*. The FTCA operates as a limited waiver of sovereign immunity, rendering the United States amenable to suit for certain, but not all, tort claims. *See, e.g., Richards v. United States*, 369 U.S. 1, 6 (1962). Thus, a claimant may file suit for claims of "personal injury . . . caused by the negligent

---

[3] The United States of America is the only proper defendant in a suit under the FTCA. *See, e.g., Hall v. Admin. Office of U.S. Courts*, 496 F. Supp. 2d 203, 206 (D.D.C. 2007). Even though this *pro se* plaintiff has not named the United States as a party, the Court overlooks this pleading defect and instead treats the plaintiff's claim as if it had been brought against the United States directly. *See, e.g., Hui v. Castaneda*, 559 U.S. 799, 810 (2010).

or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b).

There are limitations under and exceptions to the FTCA which warrant dismissal of the plaintiff's FTCA claim. Relevant to this case is the exhaustion requirement:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing* and sent by certified or registered mail. The failure of an agency to make final disposition of a claim *within six months after it is filed* shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a) (emphasis added). "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies," and a claimant's "fail[ure] to heed that clear statutory command" warrants dismissal of his claim. *McNeil v. United States*, 508 U.S. 106, 113 (1993). Here, the defendants contend that the plaintiff failed to exhaust his administrative remedies because he filed his complaint in the Superior Court prematurely, on March 8, 2016, nearly one month before the BOP denied his claim on April 6, 2016. *See* Defs.' Mem. at 6.

B.  The Plaintiff's Claim Under The Eighth Amendment

The plaintiff faces a different set of exhaustion requirements if the Court were to "to conclude . . . that [the plaintiff's] claims should be governed by the administrative processes required under the Prison Litigation Reform Act ('PLRA')." Defs.' Mem. at 7.

In relevant part, the Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

>confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *see Jones v. Bock*, 549 U.S. 199, 211 (2007). Exhaustion under the PLRA requires proper exhaustion, meaning that a prisoner must comply with procedural rules, including filing deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Thus, a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted the prison's administrative remedies. *See Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001). Exhaustion under the PLRA is an affirmative defense, *Jones*, 549 U.S. at 216, which "the defendants have the burden of pleading and proving." *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (quoting *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (internal quotation marks omitted)).

The defendants demonstrate that none of the plaintiff's administrative remedy requests filed between December 31, 2015 and October 1, 2016 pertain to the mattress restriction or any other incident occurring on December 31, 2015. Thus, the defendants demonstrate that the plaintiff failed to exhaust his administrative remedies under the FTCA by filing his complaint too soon, and failed to exhaust under the PLRA by filing no administrative remedy request at all.

## III. CONCLUSION

The Court concludes that plaintiff failed to exhaust his administrative remedies under the FTCA and the PLRA. For this reason, the Court will grant defendants' motion in its entirety. An Order consistent with this Memorandum Opinion is issued contemporaneously.

DATE: December 27, 2016                          /s/  *Beryl A. Howell*

BERYL A. HOWELL
Chief Judge